# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THERESA L. PORTELL, individually and on behalf of the class members described below, | )<br>)<br>) |
| Plaintiffs, | )<br>) No. 18-CV-05414 |
| v. | )<br>) Judge John J. Tharp, Jr. |
| NADIM KHALIL ZAYED a/k/a DEAN ZAYED, BROOKSTONE CAPITAL MANAGEMENT LLC, and KAIZEN ADVISORY, LLC, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

A group of self-described mom and pop investors brought a class action complaint in DuPage County Circuit Court against the defendants for breach of fiduciary duty in connection with investments in a mutual fund called "KZSIX." The complaint alleges that the defendants failed to disclose their conflicts of interest relating to the fund, misrepresented KZSIX's susceptibility to market downturns, and transferred the plaintiffs' investments into KZSIX without the investors' affirmative and informed consent to do so. As a result of being invested in KZSIX, the investors allegedly lost millions of dollars and incurred fees that were far greater than industry norms. The defendants removed the case to this Court, contending that the Securities Litigation Uniform Standards Act ("SLUSA") requires both removal and dismissal of the lawsuit. Eight of the nine plaintiffs voluntarily dismissed their claims without prejudice. Notice of Voluntary Dismissal, ECF No. 22. The remaining plaintiff, Theresa Portell, moved to remand, arguing that the lawsuit is based upon the mismanagement of an existing investment, not, as would be required for SLUSA preclusion, any material misrepresentation that induced investors to purchase, sell, or

hold a security. Because the alleged misrepresentations and omissions of material facts are a linchpin of this suit and were made in connection with the purchase of the KZSIX shares, this case falls squarely within the ambit of SLUSA preclusion. Portell's motion to remand, ECF No. 17, is therefore denied and the defendants are granted leave to refile their motion to dismiss, as to which the Court deferred consideration pending resolution of the remand motion.

## BACKGROUND

Portell invested funds with defendant Brookstone Capital Management, LLC ("BCM"), of which defendant Nadim Khalil "Dean" Zayed serves as president and CEO. Portell contends that BCM and Zayed owed her a duty to, among other things, "provide full and fair disclosure of all material facts" and "[d]isclose all conflicts of interest that might incline them, consciously or unconsciously, to render advice that is not disinterested." Notice of Removal Under 28 U.S.C. §§ 1441 and 1446 Pursuant to the Securities Litigation Uniform Standards Act, Ex. A, Class Action Complaint ("Compl.") ¶¶ 33–35, ECF No. 1-1.

Before August 10, 2015, Portell's funds were invested in BCM's ZEGA High-Probability Options Strategy ("HiPOS"). In 2014, Zayed formed defendant Kaizen Advisory ("Kaizen") and created a mutual fund called the "Kaizen Hedged Premium Spreads Fund" ("KZSIX"). Zayed owns at least 95% of Kaizen and is the sole beneficial owner of BCM. At all relevant times to this lawsuit Zayed was the "beneficial controlling person" of both BCM and Kaizen. *Id.* ¶ 42. KZSIX generally followed the same investment objective as HiPOS, except BCM claimed that KZSIX was a lower risk investment because it employed an additional hedging strategy intended to offset losses during market declines. In a July 2015 letter, BCM announced to its clients that Zayed and BCM would transfer some client investments from HiPOS to KZSIX unless the clients affirmatively opted out of the transaction. Defs.' Joint Resp. in Opp'n to Pls.' Mot. to Remand ("Defs.' Resp."), Ex. A, Form Letter from BCM to Clients dated July 10, 2015 ("July Letter") 1,

ECF No. 26-1 ("If you accept this change there is nothing that you need to do as the account will automatically move to the KZSIX fund. Should you not want this change, please contact your Investment Advisor Representative to discuss other investment options.").[1] The following month, Zayed transferred Portell's funds from HiPOS to KZSIX.

Portell alleges that the defendants "promoted" the KZSIX fund to its HiPOS clients, Compl. ¶ 76, and transferred client assets into the fund to enrich themselves rather than their clients. More specifically, the complaint alleges that BCM (and by extension Zayed) incurred trading expenses under HiPOS, but the structure of the KZSIX investment allowed them to push those expenses onto the fund investors. Investing in the KZSIX fund also allowed Zayed to obtain additional fees from fund investors because he was able to "double-dip" by obtaining fees from both BCM and Kaizen due to his ownership of both entities. *Id.* ¶¶ 71–73, 82–84. It also allowed the defendants to use the plaintiffs as unknowing "guinea pigs" to test the viability of the KZSIX strategy before marketing it to new potential clients. *Id.* ¶ 110. And the test didn't go well. The complaint alleges that "KZSIX was dramatically more susceptible to the volatility experienced by the broader markets than BCM represented it to be." *Id.* ¶ 101.

The defendants allegedly failed to disclose these conflicts arising from Zayed's ownership of both BCM and Kaizen to Portell and the other HiPOS investors before executing the KZSIX transactions. And investors who bought shares of KZSIX, she maintains, "could not have discovered the conflicts of interest of BCM, Kaizen Advisory, and Zayed inherent in their KZSIX

---

[1] The Court considers the entire July 2015 letter because it is central to Portell's claims and is both referenced in and attached to (in part) the complaint. *See Monominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." (citation and brackets omitted)); *see also Brokaw v. Boeing Co.*, 137 F. Supp. 3d 1082, 1091–92 (N.D. Ill. 2015) (explaining that material outside of complaint may be considered on motion to remand).

transactions through a reasonable inquiry or inspection." *Id.* ¶¶ 112, 124, 135. The complaint alleges that Zayed and BCM breached the fiduciary duties they owed to their HiPOS investors by "concealing [their] conflicts of interest from Plaintiffs at all times" and "[f]ailing to receive affirmative informed consent from Plaintiffs and the Class to waive" those conflicts. *Id.* ¶¶ 110, 122. Kaizen allegedly aided and abetted the breach by providing Zayed with an entity through which to engage in self-dealing.

The complaint defines the proposed class to include "[a]ll persons who were investment advisory clients of [BCM] at some point from August 1, 2015 until August 20, 2015; were invested in [HiPOS] prior to August 3, 2015; and held shares in [KZSIX] as of August 20, 2015." *Id.* ¶ 18. The defendants removed this case from DuPage County Circuit Court pursuant to the Securities Litigation Uniform Standards Act, 15 U.S.C. §§ 77p and 78bb. Portell moved to remand, arguing that the Complaint alleges only state-law breach of fiduciary duty and aiding-abetting claims. For their part, the defendants maintain that removal was proper and that SLUSA requires dismissal of the complaint.

## DISCUSSION

### I. SLUSA Preclusion

The Securities Litigation Uniform Standards Act ("SLUSA") requires that covered class actions based upon state law that allege fraudulent conduct in connection with the purchase or sale of a covered security be removed from state to federal court and dismissed. 15 U.S.C. § 77p(b)–(c); *see also* 15 U.S.C. § 77bb(f)(1)-(2). In 1995, Congress passed the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 77z-1 and 78u-4, which imposed heightened pleading requirements in securities fraud actions. *See* 15 U.S.C. § 78u-4(b). Congress then enacted SLUSA to authorize removal (and require dismissal) of covered class actions alleging securities fraud filed in state court in order to "prevent plaintiffs from migrating to state court in order to evade rules for

federal securities litigation in [the PSLRA]." *Brown v. Calamos*, 664 F.3d 123, 124 (7th Cir. 2011) (citation omitted).

SLUSA provides:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b); *see also* 15 U.S.C. § 78bb(f)(1). Subsection (c) further provides:

> Any covered class action brought in any State court involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b).

15 U.S.C. § 77p(c); *see also* 15 U.S.C. § 78bb(f)(2). Portell does not dispute that her lawsuit qualifies as a "covered class action," that her claims are based upon state law, or that the securities at issue qualify as "covered" securities. *See* Pls.' Mem. in Supp. of Mot. for Remand ("Mem.") 6, ECF No. 18. The question for the Court's consideration is therefore limited to whether the complaint alleges "an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(b)(1); *see also* 15 U.S.C. § 78bb(f)(1)(A).[2] If the answer is yes, SLUSA requires both removal and dismissal of the lawsuit. If the answer is

---

[2] The defendants do not contend that the complaint alleges "that the defendant used or employed any manipulative or deceptive device or contrivance." 15 U.S.C. § 77p(b)(2); *see also* 15 U.S.C. § 78bb(f)(1)(B).

5

no, then Portell's motion to remand must be granted because the Court would not have jurisdiction over Portell's state law breach of fiduciary duty claims.[3]

SLUSA "is designed to prevent persons injured by securities transactions from engaging in artful pleading or forum shopping in order to evade limits on securities litigation that are designed to block frivolous or abusive suits." *Holtz v. JPMorgan Chase Bank, N.A.*, 846 F.3d 928, 930 (7th Cir. 2017) (citing *Merrill Lynch, Pierce, Fenner & Smith v. Dabit*, 547 U.S. 71, 81–84 (2006)). Accordingly, in assessing whether Portell's claims are precluded, the court must look beyond the labels the complaint employs to describe the claims and legal theories asserted, and instead analyze the substance of those claims. *See Holtz*, 846 F.3d at 930 (SLUSA "does not ask what state-law theory a plaintiff invokes."); *see also Brown*, 664 F.3d at 130–31 (SLUSA precluded claims because "[alt]hough the suit [wa]s for breach of fiduciary obligations, the breach appear[ed] to rest on an allegation of fraud, as is often the case."); *Kutten v. Bank of Am.*, 530 F.3d 669, 671 (8th Cir. 2008) (allegations of "deceiving," "failing to be honest," "omitting a material fact," and "failing to disclose" are subject to SLUSA preclusion regardless of the label on the cause of action in which they are included). Where plaintiffs attempt to "disguise what amount to claims of securities fraud as claims for negligence and breach of fiduciary duty under state law," that "is not enough to evade preclusion of those claims under SLUSA." *Potter v. Janus Inv.*, 483 F. Supp. 2d 692, 702 (N.D. Ill. 2007). Plaintiffs "cannot sidestep SLUSA by omitting" from their complaint allegations regarding the elements of fraud, such as those "of *scienter* or reliance." *Holtz*, 846 F.3d at 930.

---

[3] The notice of removal asserts no other basis for the exercise of federal jurisdiction over Portell's claims.

Accordingly, any claims, regardless of their labels, relating to a purchase or sale of a covered security "that depend on the nondisclosure of material facts must proceed under the federal securities laws exclusively." *Holtz*, 846 F.3d at 929–30. But what does it mean to say that a claim "depends" on allegations of nondisclosure? Although there is considerable debate among the circuit courts of appeal concerning "the scope of SLUSA's 'misrepresentation or omission of a material fact' prohibition,"[4] the Seventh Circuit has held that claims brought under a breach of fiduciary duty banner are precluded by SLUSA where they can reasonably be construed as involving nondisclosures that could be actionable under the securities laws. In *Holtz* (which along with *Goldberg v. Bank of Am., N.A.*, 846 F.3d 913 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 173 (2017), represents the Circuit's most recent exposition concerning the scope of SLUSA preclusion), the Seventh Circuit concluded that SLUSA precluded a suit premised on allegations that a bank's investment advisors labored under a conflict of interest because they earned more for recommending the bank's mutual funds than other funds, notwithstanding the plaintiff's disavowal of any intent to rely on nondisclosure of that conflict in advancing her state law contract and breach of fiduciary duty claims. 846 F.3d at 930. The conduct alleged, the court held, necessarily involved misrepresentations and omissions that could support a securities fraud claim because disclosure was critical to the plaintiff's claim whether based on state or federal law. *Id*. And because the complaint set forth facts that could give rise to a securities claim premised on nondisclosure, the court of appeals held that it falls within SLUSA's ambit: "A statement along the lines of 'we will act in your best interest' plus nondisclosure of a competing private interest is the basis of many

---

[4] *Goldberg v. Bank of Am., N.A.*, 846 F.3d 913, 917 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 173 (2017) (Flaum, J., concurring). Judge Flaum's concurring opinion and Judge Hamilton's dissenting opinion in *Goldberg* describe the competing approaches the circuits have adopted to address this issue.

7

securities actions," and after SLUSA's enactment, "a plaintiff cannot proceed by omitting the securities theory."[5] *Id*. at 932. In *Goldberg*, the court of appeals confirmed the point, holding that a suit arising from the non-disclosure of a mutual fund fee was precluded notwithstanding its characterization in the complaint as a breach of contract and fiduciary duty because the allegations of non-disclosure brought the claim "well inside the bounds of securities law." 846 F.3d at 916. In short, where "a claim could be pursued under the federal securities law, then it is covered by [SLUSA] even if it also could be pursued under state contract or fiduciary law." *Id*.[6] This case presents another instance in which SLUSA precludes claims involving nondisclosure of a conflict of interest, notwithstanding the breach of fiduciary duty label appended to each count of the complaint.

---

[5] Although it is of no consequence in this case where the complaint is replete with express allegations about nondisclosure, it bears noting that preclusion does not depend on whether allegations of nondisclosure are express. The nondisclosure in *Holtz* was implied; the amended complaint expressly disavowed any allegation of "fraud, deceptive practices, misrepresentation, or material omission in connection with the purchase or sale of securities." *See Holtz v. JP Morgan Chase & Co.*, No. 12-7080 (N.D. Ill.), Am. Class Action Compl. ¶ 1, ECF No. 34. And in *Brown*, the Seventh Circuit held the suit to be precluded on the basis of implicit misrepresentations and omissions. *See* 664 F.3d at 126–27 (complaint "is interpreted most naturally as alleging a misrepresentation" even though it "doesn't say this in so many words"; "[a] misleading omission is also alleged, at least implicitly").

[6] The Court does not understand this to mean that preclusion is limited to situations in which a court can conclude that the facts alleged are sufficient to state a federal securities fraud claim; to the contrary, in both *Holtz* and *Goldberg*, the court of appeals made clear that preclusion does not turn on whether a complaint pleads a viable securities law claim. *See Holtz*, 846 F.3d at 930 (holding that "a plaintiff cannot sidestep SLUSA by omitting allegations of *scienter* or reliance); *Goldberg*, 846 F.3d at 916 (rejecting premise "that only state-law claims that overlap winning securities claims" are precluded by SLUSA); *see also* the discussion *infra* at 14-15. Rather, the Court understands a securities claim that can be "pursued" to be one where "the allegations of the complaint make it likely that an issue of fraud will arise." *Brown*, 664 F.3d at 128–29.

## II. Alleged Misrepresentations and Omissions of Material Fact

The complaint plainly alleges, and the "breach of fiduciary duty" theories heavily rely on, misrepresentations and omissions of material fact by the defendants, starting with and arising from their failure to disclose conflicts related to Zayed's ownership of both BCM and Kaizen. A central premise of the complaint is that the defendants "had numerous ***undisclosed*** conflicts," ¶ 2 (emphasis added), and that as a consequence they never received "affirmative informed consent" to waive those conflicts, ¶ 110(a), and invested in KZSIX without "authority" to do so, ¶ 110(d). To have "authority" to make the KXSIX transfers, the defendants would have had to "make a full disclosure," *id.* ¶ 45; the claim that the investors failed to provide informed consent is necessarily a nondisclosure claim, *see Goldberg*, 846 F.3d at 920 (Flaum, J., concurring) ("to have 'authorized' the fees, the Bank would have had to have disclosed them to him; so the 'authorization' claim was still fundamentally tied to a material misrepresentation or omission"). In addition, Zayed was allegedly motivated to engineer the transfer of investments from HiPOS to KZSIX (and presumably also motivated to omit sharing details about his alleged conflicts) because he was able to "double-dip" when earning fees from both BCM and Kaizen on funds invested in KZSIX due to his ownership of both entities. Zayed also was allegedly driven by a desire to push trading expenses onto the putative class members and test the viability of the KZSIX fund before promoting it to prospective clients. Portell further alleges that KZSIX was more susceptible to market volatility than BCM represented it to be. These alleged misrepresentations and disclosure omissions fall well within the ambit of SLUSA preclusion because "[a] fiduciary that makes a securities trade without disclosing a conflict of interest violates federal securities law. Likewise, a broker-dealer that fails to achieve best execution for a customer by arranging a trade whose terms favor the dealer rather than the client has a securities problem, not just a state-law contract or fiduciary-duty problem." *Holtz*, 846 F.3d at 932 (internal citation omitted); *see also Goldberg*, 846

9

F.3d at 916 ("A claim that a fiduciary that trades in securities for a customer's account has taken secret side payments is well inside the bounds of securities law.").

Portell contends in her reply brief that even if the complaint alleges misrepresentations and omissions, those misrepresentations and omissions are not material. Pls.' Reply in Supp. of Mot. for Remand ("Reply") *passim*, ECF No. 27. "An omission is 'material' when a reasonable investor would deem it significant to an investment decision." *Holtz*, 846 F.3d at 934. Portell's contention regarding the immateriality of her own allegations is impossible to square with her theory of the case. Her claims are grounded in allegations that the defendants' failures to accurately represent information, such as Zayed's conflicts of interest and KZSIX's ability to withstand market downturns, duped the investors into going along with the KZSIX transaction and had a materially negative effect on their investments. *Cf. Holtz*, 846 F.3d at 934 ("[The plaintiff] herself deems the [defendant]'s incentives material to investments; that's the basis of this suit."). In fact, Portell expressly describes at least some aspects of Zayed's conflict of interest as material: "Zayed benefitted from the payment of both advisory fees and fund management fees from Plaintiffs and the Class. ***This is a material conflict of interest*** . . . ." Compl. ¶ 84 (emphasis added). Where, as here, misrepresentations and omissions concerning the defendants' alleged conflicts of interest constitute the foundation of the plaintiff's claim for relief, they are plainly material.

III.    **"In Connection with"**

To fall within SLUSA's ambit, the relevant misstatements and omissions must have been made "in connection with" the purchase or sale of a covered security. It is as to this requirement that Portell makes her principal stand. She says that her complaint is limited to an assertion that the defendants "mismanaged an existing investment rather than induc[ed] any action whether to purchase, sell, or hold a security." Mem. 2. The defendants, she maintains, "were negligent in implementing a complex strategy that they were not qualified to employ in order to maximize fees

rather than return on Plaintiff's investment." *Id.* As a threshold matter, even that description belies the negligence characterization Portell ascribes to her claims, because it concedes that the defendants were engaged in an undisclosed scheme to maximize their fees rather than the return to their investors. That's intentional conduct that sounds in fraud, not negligence; Portell alleges not that the defendants acted inadvertently but that the defendants acted for their own benefit without telling the investors that they were doing so.

More importantly, Portell's contention that "these claims simply boil down to Defendants['] negligence in employing a complex investment scheme," Mem. 7, ignores that the putative class members were not invested in that scheme until the defendants transferred their investments from another fund. Those transfers are alleged in the complaint to have been effected on the basis of misrepresentations and omissions (*i.e.*, fraud). To invest the putative class members' money in the KZSIX fund, the defendants had to sell the investment in HiPOS and purchase shares in the KZSIX fund. Portell has not disputed that the securities that the defendants sold to exit the HiPOS investment or the securities purchased to enter the KZSIX investment were covered securities. Indeed, Portell alleges that KZSIX was an "open fund registered under the Investment Company Act of 1940," Compl. ¶ 53, which meets the statutory definition of a covered security under SLUSA, *see* 15 U.S.C. § 77r(b)(2) ("A security is a covered security if such security is a security issued by an investment company that is registered . . . under the Investment Company Act of 1940."). Portell's unsupported contention that "[t]here is no allegation in the Complaint regarding the purchase or sale of a security," Reply 1, is simply wrong. Although the putative class members did not personally place the KZSIX transaction, the defendants placed it as their agent after giving them the option to opt out. Defs.' Resp., Ex. A, July Letter, ECF No. 26-1 ("If you accept this change there is nothing that you need to do as the account will automatically move to

the KZSIX fund. Should you not want this change, please contact your Investment Advisor Representative to discuss other investment options."). "[T]he 'in connection with' requirement is satisfied when a broker makes a purchase or sale as an investor's agent." *Holtz*, 846 F.3d at 934; *see also Dabit*, 547 U.S. at 85 ("[I]t is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else.").

The alleged misrepresentations and omissions here were "made in connection with an impending investment decision." *Holtz*, 846 F.3d at 933. The complaint alleges that Zayed concealed his conflicts of interests from the investors "at all times" and that, specifically, Zayed had failed to make a full disclosure "*[w]hen* Zayed entered the trades for KZSIX on behalf of" the investors. Compl. ¶¶ 45, 110, 122, 132 (emphasis added). And the July 2015 letter that contained various representations relating to the KZSIX investment—including representations regarding KZSIX's ability mitigate losses during a market decline, which Portell alleges were untrue, *see* Compl. ¶ 101—was sent to the investors about a month before the impending August 2015 KZSIX investment. Moreover, regardless of the timing of the alleged misrepresentations and omissions, the Supreme Court has interpreted the "in connection with" language of § 77p(b)(2) broadly, holding that even a decision to hold a security qualifies if the decision to continue holding the security is affected by the alleged fraud. *Dabit*, 547 U.S. at 85–87. So, even had the alleged misstatements and omissions followed, rather than preceded, the purchase of the KZSIX shares, they would still be subject to preclusion as having contributed to the investors' decision not to withdraw from that investment.

This case is readily distinguished from *Gavin v. AT&T Corp.*, 464 F.3d 634 (7th Cir. 2006), on which Portell heavily relies for her "in connection with" argument. In *Gavin*, the alleged "fraud" solely concerned a communication about how shareholders could exchange their shares of

MediaOne, a company that had been merged into AT&T, for shares of AT&T. The Seventh Circuit held that the alleged fraud was not "in connection with" the purchase or sale of a security because the merger had been consummated before the alleged fraud, and the mechanical process of how to obtain the new shares, the Court held, had no more to do with the purchase or sale of a security (the merger) "than if [defendant] had asked the MediaOne shareholders 'do you want your AT&T shares sent to you by regular mail or by courier?'" *Id.* at 638. But what is alleged here is not a misstatement about ministerial acts that were required to effect the transfer of HiPOS shares into KZSIX after investors had agreed to (or acquiesced in) that transaction but rather misstatements and omissions relevant to and contemporaneous with the decision about whether to accept the transfer. *Holtz* distinguished *Gavin* on precisely this basis, *see* 846 F.3d at 933, and *Gavin* itself made the point, noting that "[t]his would be a different case from the standpoint of SLUSA had the MediaOne shareholders been induced by fraudulent representations by AT&T to vote for the merger." 464 F.3d at 638.[7]

---

[7] Portell relies on other easily distinguished cases as well. Her citation to *Spielman v. Merrill Lynch, Pierce, Fenner & Smith*, 332 F.3d 116 (2d Cir. 2003), for example, is badly off the mark, and not just because her description of the case as one in which "the district court's remand was affirmed," Mem. 7, is simply wrong (the district court ruling was not affirmed on appeal; the court of appeals dismissed the appeal for lack of subject matter jurisdiction and said nothing whatsoever about the merits). Putting that misstatement aside, the district court's remand was based on its view that the alleged misrepresentations were not "in connection with the purchase or sale of a security" because they "did not concern the value" of the securities, *Spielman v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 01-Civ.-3013, 2001 WL 1182927, at *5 (S.D.N.Y. Oct. 9, 2001)—an argument that the Seventh Circuit expressly rejected in *Goldberg*, *see* 846 F.3d at 916 ("[T]he Securities Exchange Act of 1934 forbids material misrepresentations and omissions in connection with securities transactions whether or not the misrepresentation or omission concerns the price, quality, or suitability of the security."). Portell's characterization of *Spielman* as "controlling" is therefore inexplicable for reasons beyond the fact that cases from other circuits are not controlling on the courts of this circuit in any event.

*Green v. Ameritrade*, 279 F.3d 590 (8th Cir. 2002) provides another example of Portell's reliance on irrelevant cases. There, the Eighth Circuit held that fraud claims against a firm that provided stock quotes alleged not to have been, as advertised, "real time" quotes, was not subject to SLUSA preclusion because the complaint included no allegations that Portell or other putative

Portell's argument that the complaint doesn't allege that she was induced to invest in KZSIX takes us back to SLUSA's imperviousness to artful pleading. Portell contends that hers is really a negligence claim because it does not plead reliance and so would not support a securities fraud action under § 10(b) and Rule 10(b)(5). As noted above, *supra* at 8 n.6, that argument holds no water; "a plaintiff cannot sidestep SLUSA by omitting allegations of *scienter* or reliance." *Holtz,* 846 F.3d at 930. SLUSA preclusion does not turn on whether federal law provides a cause of action. The Supreme Court expressly held in *Dabit* that SLUSA precludes not only state law class-action claims brought by plaintiffs who have a private remedy under federal law, but "also pre-empts state-law class-action claims for which federal law provides no remedy." 547 U.S. at 74[8]; *see also Goldberg*, 846 F.3d at 916 (contention "that only state-law claims that overlap winning securities claims are affected" by SLUSA is "wrong"); *Holtz*, 846 F.3d at 933 ("*Dabit* holds that SLUSA applies whether or not a federal securities theory would succeed."). SLUSA was designed to preclude securities class actions under any state law theory, not just those that are broad enough to subsume all of the requirements of a federal securities claim. If, as Portell argues,

---

class members "used price information provided by the real-time quote service to purchase or sell any particular security." *Id.* at 597. It is unsurprising, then, that the court concluded that the alleged misrepresentations were not in connection with the purchase or sale of any security. That is simply not the case here, where it is undisputed that Portell purchased and held shares of KZSIX, a mutual fund, contemporaneously with the alleged misrepresentations and omissions.

The Court notes as well that Portell essentially ignores cases from this Circuit that are directly on point, such as *Holtz* (which Portell cited in reply only on the issue of materiality) and *Goldberg* (which she did not cite at all). Portell's failure to address these cases forthrightly, even in reply after they feature prominently in the defendants' response, while relying on dated and distinguishable out of circuit cases, does nothing to strengthen her argument.

[8] "Although some case law refers to SLUSA preemption rather than preclusion, SLUSA does not itself displace state law with federal law but makes some state-law claims nonactionable through the class-action device in federal as well as state court." *Nielen-Thomas v. Concorde Investment Servs., LLC*, 914 F.3d 524, 529 n.5 (7th Cir. 2019) (citing *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 636 n.1 (2006)) (internal quotation marks omitted).

the complaint does not suffice to state a securities fraud claim under § 10(b) and Rule 10(b)(5), but it still involves a misrepresentation or omission in connection with a securities transaction, that is a reason to conclude that the putative class claim is subject to SLUSA preclusion, not exempt from it.

SLUSA therefore authorizes removal of the complaint and the motion to remand is therefore denied. Portell's attempt to double-down on her remand motion by asserting that she should also be awarded fees because the removal was objectively unreasonable itself borders on the frivolous and is denied.

## IV. Dismissal

The Court previously denied the defendants' motion to dismiss without prejudice to first address the remand motion, but denial of the remand motion seemingly also requires dismissal of this action. Title 15 Subsection 77p(c) authorizes removal when the lawsuit meets the criteria set forth in Subsection 77p(b), which requires dismissal. Having concluded that the allegations in the complaint meet the criteria set forth in Subsection (b), "neither the district court nor the state court may entertain [the action], and the proper course is to dismiss." *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 (2006).

The dismissal required, moreover, is with prejudice. The Seventh Circuit has taken a skeptical view of dismissals that permit amendment of the complaint to remove allegations that would implicate the issue of whether there had been misrepresentations or omissions made in connection with the purchase or sale of securities, recognizing that "almost all federal securities suits could be recharacterized as contract suits about the securities involved." *Holtz*, 846 F.3d at 930–31. In *Brown*, the court of appeals further noted the problem with allowing amendments to SLUSA-precluded complaints:

15

> [O]nce the case shorn of its fraud allegations resumes in the state court, the plaintiff—who must have thought the allegations added *something* to his case, as why else had he made them?—may be sorely tempted to reintroduce them, and maybe the state court will allow him to do so. And then SLUSA's goal of preventing state-court end runs around limitations that the Private Securities Litigation Reform Act had placed on federal suits for securities fraud would be thwarted.

664 F.3d at 128 (emphasis in original). The *Brown* panel went on to hold that the forum manipulation rule applicable in removal cases required dismissal of the suit with prejudice following the SLUSA removal. *Id.* at 131 (amendment of complaint "to delete the passage that injected fraud into the case . . . is contrary to the 'forum manipulation' rule recognized in *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007)"; given reintroduction risk, district court would not have been required to permit amendment "***even if the forum manipulation rule were not a bar as well***") (emphasis added). Dismissal with prejudice therefore seems to be required here.

Neither *Holtz* nor *Goldberg*, both of which affirmed dismissals with prejudice, call *Brown*'s no-amendment holding into question. To the contrary, neither offered an opportunity to amend despite acknowledging that it might have been possible for the plaintiffs in those cases to have set forth claims that did not implicate misstatements and omissions. In *Holtz*, the court concluded that "Holtz would have a contract claim free of a securities component" had she alleged that the Bank broke its promise by mistake, but affirmed the dismissal without opportunity to replead because she had failed to make such fraud-free allegations in the removed complaint. 846 F.3d at 932. Similarly, in *Goldberg*, Judge Flaum stated in his concurring opinion that the *Brown* panel (of which he was a member) did not address the question of whether SLUSA preclusion can be applied on a claim-by-claim basis, but nevertheless concluded that preclusion of the entire complaint was required because, although the plaintiff might have been able to plead a claim that

16

did not involve a material misrepresentation or omission, he "did not take this approach" in the removed complaint. 846 F.3d at 920.

Here, it is also possible to imagine a complaint that does not involve misrepresentations or omissions. Portell has insisted (albeit unconvincingly) that her claim is really for negligence, not fraud, and a complaint that alleged only that the defendants negligently designed, tested, and managed the KZSIX fund, without relying on undisclosed conflicts of interest or otherwise implicating the information provided in connection with the KZSIX investment, might not fall within SLUSA's ambit. But that is not this complaint. As presented here, the breach of fiduciary claims rely heavily on allegations of undisclosed conflicts of interest and lack of informed consent. And, for the reasons discussed, those claims are subject to SLUSA removal—which also appears to require dismissal of the putative class action complaint with prejudice.

It bears noting that dismissal would not leave Portell without a remedy. If, after dismissal, she wishes to reassert any claims—even those that rely on the alleged misrepresentations and nondisclosures alleged her present complaint—she may do so in her own individual capacity; SLUSA simply precludes her ability to do so in a "covered class action"—that is, an action involving fifty or more identified plaintiffs acting in their individual capacities, 15 U.S.C. § 78bb(f)(5)(B)(i)(I), or as a representative of other similarly situated individuals without regard to the size of the proposed class, 15 U.S.C. § 78bb(f)(5)(B)(i)(II). *See Nielen-Thomas v. Concorde Inv. Servs., LLC*, 914 F.3d 524, 530 (7th Cir. 2019).

Because the Court has not yet afforded Portell an opportunity to address dismissal, however, the case will not yet be dismissed. A status hearing will be held on Friday, March 29, 2019 at 9:00 a.m. to address whether, in light of the denial of her remand motion, Portell seeks to contest dismissal of the putative class-action complaint. If Portell determines, in advance of the

status hearing, that she does not wish to contest dismissal, per se, but wishes to appeal the denial of her remand motion, she may file a voluntary notice of dismissal with prejudice noting the reservation of her right to appeal the denial of her motion to remand. In the event of such filing, the status hearing will be stricken, the case will be terminated, and a final, appealable, judgment in favor of the defendants will be entered.

*   *   *

For the reasons stated above, Portell's motion to remand [17] is denied.

Dated: March 21, 2019

John J. Tharp, Jr.
United States District Judge